

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ELLIS SMITH                                :          CIVIL ACTION
                                           :
        v.                                 :          NO.  07-2080
                                           :
SCHOOL DISTRICT OF PHILADELPHIA            :

**FILED**

MAR 1 0 2009

MICHAEL E. KUNZ, Clerk
By_____Dep. Clerk

<u>**MEMORANDUM AND ORDER**</u>

**Juan R. Sánchez, J.**                                         **March 10, 2009**

Aaron Raynor, a minor, brings this 42 U.S.C. § 1983 action through his parent and natural guardian, Ellis Smith, alleging the School District of Philadelphia violated his constitutional rights by failing to prevent an assault on Aaron near his high school.  Drawing all inferences in the light most favorable to Smith, the Court concludes there is no genuine issue of material fact as to whether the School District's conduct constituted a state-created danger.  Smith also fails to identify any policy or custom which would give rise to municipal liability under *Monell v. Department of Social Services*, 436 U.S. 658 (1978).  The Court will therefore grant summary judgment in the School District's favor.

**FACTS**

Aaron Raynor was a ninth-grader at Roberts Vaux High School (Vaux) during the 2004-2005 school year, and he resided about 0.7 miles from the School.

On May 11, 2005, Aaron informed Vaux's principal, Sandra Ruffin-Pearson, he was being threatened in school.  Ruffin-Pearson attempted to reach Aaron's father, Smith, by telephone, but was unable to reach him.  She sent Aaron home around 2:30 p.m., about a half-hour before official dismissal time.  Along his walk home, at an intersection about 0.2 miles from Vaux, Aaron was

1

attacked by four young men.  Aaron suffered lacerations to his right arm and back and other injuries.

A fellow Vaux student, S.F., was later identified as one of the four males who attacked Aaron.  As a result of the attack on Aaron, S.F. was reassigned to C.E.P., a disciplinary school. S.F.'s disciplinary record at Vaux reflects he was involved in a prior violent incident – a fight with another student which took place on March 18, 2004.[1]  There were no documented incidents between Aaron and S.F. prior to the May 11, 2005 attack.  Pl.'s Br. at 3.

In his Amended Complaint, Smith alleged the School District violated Aaron's Due Process rights,[2] in violation of 42 U.S.C. § 1983.  Smith also appears to assert Aaron's rights under § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 793, *et seq.*, and the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 *et seq.* (IDEA), were violated and that such violations may serve as a basis for a § 1983 claim.[3]

---

[1]S.F.'s record suggests the March 18, 2004 altercation took place inside the school.  His record also reflects three additional incidents of misconduct.  On October 21, 2004, S.F. ran and yelled in the school hallway.  On January 18, 2005, S.F. threw a chair in a classroom and cursed at a teacher.  On April 28, 2005, S.F. participated in a food fight in the school cafeteria.

[2]In his Amended Complaint, Smith also alleged the School District violated Aaron's Equal Protection rights, but he failed to brief the issue in his opposition to the School District's motion for summary judgment and his counsel expressly abandoned pursuit of an Equal Protection claim at oral argument on the motion.

[3]In Count I of his Amended Complaint, Smith asserted Aaron was deprived of "his right to a free appropriate public education in the least restrictive environment, in violation of the Equal Protection Clause."  Am. Compl. ¶ 27.  In Count II, styled "Violation of Federally Protected Rights; Section 1983," Smith alleges the School District, "through [its] non-compliance with Section 504 and the Fourteenth Amendment," violated Aaron's "right to a free appropriate education in the least restrictive environment in a safe environment and to equal protection under the law."  Am. Compl. ¶ 31.  Smith's allegations regarding deprivation of a free appropriate public education appear to claim violation of the IDEA's requirements.  *See Ridgewood Bd. of Educ. v. N.E. ex rel. M.E.*, 172 F.3d 238, 249 (3d Cir. 1999) ("Under IDEA, a disabled student is entitled to a free appropriate public education until the student reaches age twenty-one.") (citation omitted).
  Smith's original complaint also asserted independent claims under § 504 of the

## DISCUSSION

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of showing no material fact is in dispute, and the Court must review the record evidence and draw all reasonable inferences in favor of the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The non-moving party, however, must present sufficient evidence for a jury reasonably to find in its favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"To state a claim under Section 1983, a plaintiff must allege violation of rights secured by the Constitution and laws of the United States, and must show that a person acting under color of state law committed the alleged deprivation." *West v. Atkins*, 487 U.S. 42, 48 (1988). "Section 1983 does not, by its own terms, create substantive rights; it provides only remedies for deprivations of rights established elsewhere in the Constitution or federal laws." *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996).

Municipalities may be sued under § 1983, with some limitations. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Municipalities may not be held liable under § 1983 based solely upon the conduct of their employees or agents. *Id.* "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said

---

Rehabilitation Act of 1973, 29 U.S.C. § 794, *et seq.* The parties subsequently entered into a Settlement Agreement and General Educational Claims Release (Settlement Agreement), which extinguished all claims related to Aaron's educational program, including, among others, § 504; Individuals with Disabilities Education Act, 20 U.S.C. § 1400 *et seq.*; Americans with Disabilities Act, 42 U.S.C. § 12101; and/or any related constitutional claims. Settlement Agreement ¶ 2.

to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* A school district is a municipality for the purposes of a § 1983 claim. *See* 53 Pa. C.S. § 7101 (defining "municipality" to include school districts); *Sanford v. Stiles*, 456 F.3d 298, 314 (3d Cir. 2006) (analyzing a school district's liability as a municipality).

Smith advances two theories of liability under § 1983. First, Smith asserts a state-created danger theory in alleging the School District violated Aaron's Due Process rights. Second, Smith asserts the School District violated Aaron's § 504 and IDEA rights. For Smith's claim to survive the School District's summary judgment motion, Smith must show there is a genuine issue of fact for trial on either of these theories, and he must also show he can meet the *Monell* threshold for imposing § 1983 liability on a municipality. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ("[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.").

As an initial matter, allegations of § 504 or IDEA violations do not provide a basis for a § 1983 claim. *See A.W. v. Jersey City Pub. Sch.*, 486 F.3d 791, 803 (3d Cir. 2007) ("Congress did not intend § 1983 to enforce the predicate rights secured by the IDEA . . . ."); *id.* at 806 ("[W]e conclude that § 1983 is not available to provide a remedy for defendants' alleged violations of [the plaintiff's] rights under Section 504."); *see also Chambers v. Sch. Dist. of Phila. Bd. of Educ.*, No. 05-2535, 2007 WL 4225584, at *6 (E.D. Pa. Nov. 29, 2007) (recognizing *A.W.* holds "plaintiffs may not bring actions pursuant to 42 U.S.C. § 1983 to enforce the predicate rights secured by IDEA and § 504"). Therefore, to the extent Smith's § 1983 claim is premised upon alleged § 504 or IDEA violations,

his claim fails as a matter of law.[4]

A governmental entity's failure to protect an individual from harm inflicted by private actors is not actionable under the Due Process Clause. *See DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 195-96 (1989) ("[N]othing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors. The Clause is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security."). There is, however, a state-created danger exception to the *DeShaney* rule, adopted by the Third Circuit in *Kneipp v. Tedder*, 95 F.3d 1199 (3d Cir. 1999). The "essential elements" of a state-created danger claim are the following:

(1) the harm ultimately caused was foreseeable and fairly direct;

(2) a state actor acted with a degree of culpability that shocks the conscience;

(3) a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general; and

(4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.

*Bright v. Westmoreland County*, 443 F.3d 276, 281-82 (3d Cir. 2006) (citations and internal quotation marks omitted). Regarding the fourth element, the *Bright* court stressed a successful plaintiff must demonstrate a defendant's affirmative acts caused the plaintiff's harm. *See id.* at 282 ("It is misuse of state authority, rather than a failure to use it, that can violate the Due Process Clause."). A plaintiff's failure to satisfy any of the four elements defeats his state-created danger

---

[4]To the extent Smith attempts to assert § 504 or IDEA claims independent of his § 1983 claim, such claims are barred by the Settlement Agreement. *See* Settlement Agreement ¶ 2.

claim. *See Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 914 (3d Cir. 1997) (noting the court did not need to decide whether plaintiff satisfied an element of the *Kneipp* test where he could not satisfy the other three). Smith argues Ruffin-Pearson's failure to respond appropriately to Aaron's report of threats, combined with the School District's failure to remove S.F. from school prior to his attack on Aaron, satisfy the state-created danger exception to the *DeShaney* rule. To avoid entry of summary judgment against him, Smith must present evidence which shows there is a genuine issue of material fact as to each element of his state-created danger claim. *See* Fed. R. Civ. P. 56(c).

First, a plaintiff must show the harm which befell him was "foreseeable and fairly direct." *Bright*, 443 F.3d at 281 (citation and internal quotation marks omitted). Smith argues Aaron's injuries were foreseeable because the School District was aware of other violent incidents in which S.F. was involved, and therefore could have foreseen his attack on another student. Smith likens the School District's knowledge of S.F.'s alleged violent propensity to that of the School District in *Gremo v. Karlin*, 363 F. Supp. 2d 771 (E.D. Pa. 2005). The *Gremo* court denied the School District's motion to dismiss a state-created danger Due Process claim, where the plaintiff alleged he was severely beaten by a group of fifteen students, after they threw a garment over his head, in an unmonitored common area of his high school. *Id.* at 777. The plaintiff alleged school officials were aware the same group of students had committed the same kind of attack using the same methods and in the same school locations for two years prior to the attack on the plaintiff. *Id.* at 778-79.

The instant case is distinguishable from *Gremo*. This Court is tasked with deciding a motion for summary judgment, not a motion to dismiss. At this stage of litigation, Smith must produce evidence such that a reasonable jury could find Aaron's attack was foreseeable. *See In re Phillips Petroleum Secs. Litig.*, 881 F.2d 1236, 1243 (3d Cir. 1989) ("[A] plaintiff may not simply rest upon

6

his bare allegations to require submitting the issue to a jury; rather, he must present 'significant probative evidence tending to support the complaint.'") (quoting *Anderson*, 477 U.S. at 249). The only record evidence the attack was foreseeable is S.F.'s disciplinary record at Vaux.[5] S.F.'s record documents only one violent incident, which took place at school, over a year before S.F.'s attack on Aaron off school grounds. None of the remaining incidents of misconduct involved attacks on fellow students, and each took place on school grounds. The Court concludes a jury could not reasonably find S.F.'s attack on Aaron off school grounds was foreseeable based upon S.F.'s disciplinary record.

Assuming Aaron's complaint to Ruffin-Pearson could be considered information within the School District's purview, the harm which befell Aaron was nevertheless neither foreseeable nor fairly direct. Unlike the allegations in *Gremo*, there is no evidence to suggest it was foreseeable Aaron would be attacked on his way home from school nor is there any evidence of the School District's awareness of similar attacks off school grounds. There is also no evidence Aaron's attack was a "fairly direct" result of either Ruffin-Pearson's decision to release Aaron from school early, or the School District's failure to remove S.F. from Vaux. *See Mohammed v. Sch. Dist. of Phila.*, No. 05-1599, 196 Fed. Appx. 79, 80-82 (3d Cir. June 5, 2006) (affirming summary judgment in the School District's favor on a state-created danger Due Process claim because the plaintiff student failed to show his injuries suffered during an attack on school grounds were a "fairly direct" result of the School District's affirmative acts, in part because school officials had no reason to suspect the student would be attacked in the specific location in which he was attacked (a stairwell), and because

---

[5] S.F.'s disciplinary record was submitted by the School District, not Smith, but the Court must review all record evidence in determining whether a material issue of fact exists for trial. *See Matsushita*, 475 U.S. at 587.

the plaintiff's position – a full complement of security officers and/or surveillance of the stairwell would have prevented the attack – was speculative); *Bailey v. Sch. Dist. of Phila.*, No. 06-4240, 2008 WL 343088, at *1-3 (E.D. Pa. Feb. 7, 2008) (dismissing a state-created danger Due Process claim where school officials refused to permit the plaintiff student to accompany her class on a field trip and she was subsequently lured away by an individual who assaulted her; reasoning the plaintiff's injuries were not foreseeable or a fairly direct result of school officials' actions because there were no allegations school officials had reason to believe an attack of that nature would occur nor that individuals posing a violent threat to students were lurking near school grounds).

Second, a plaintiff must show "a state actor acted with a degree of culpability that shocks the conscience." *Bright*, 443 F.3d at 281. "[I]n *any* state-created danger case, the state actor's behavior must *always* shock the conscience. But what is required to meet the conscience-shocking level will depend upon the circumstances of each case, particularly the extent to which deliberation is possible. In some circumstances, deliberate indifference will be sufficient.  In others, it will not." *Sanford*, 456 F.3d at 310 (emphasis in original).  The *Sanford* court instructed, where state actors have time for deliberation somewhere between the time required for split-second decision-making and unhurried judgment, the proper conscience-shocking standard is whether defendants "disregard a great risk of serious harm rather than a substantial risk." *Id.* at 309-10.  The Court concludes the relevant conscience-shocking standard in this case is whether the School District "disregard[ed] a great risk of serious harm," however, even applying the "deliberate indifference" standard, Smith has failed to demonstrate there is a genuine issue of fact as to whether the School District's conduct was conscience-shocking.  Smith argues Ruffin-Pearson's reaction to Aaron's complaints coupled with the School District's failure to remove S.F. from Vaux constituted deliberate indifference to

8

Aaron's safety.  As discussed previously, S.F.'s disciplinary record did not reflect such a dangerous propensity for violence such that a reasonable jury could conclude S.F.'s continued presence at Vaux was a threat to Aaron's safety.  In addition, Ruffin-Pearson's reaction did not constitute deliberate indifference because she endeavored to protect Aaron, first by calling his father, and when that was unsuccessful, by sending Aaron home early to avoid an altercation.  Smith has presented no evidence she or other School District officials were aware of a specific threat to Aaron on his walk home or of similar attacks off school property.  Even if Ruffin-Pearson's actions could be construed as negligent, there is no evidence of deliberate indifference.  *See Mohammed*, 196 Fed. Appx. at 82 (concluding School District's failure to monitor the stairwell in which the plaintiff was attacked and failure to maintain an appropriate number of security guards could amount to only negligence or recklessness, neither of which suffice to support a state-created danger claim).

Third, a plaintiff must show "a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions." *Bright*, 443 F.3d at 281 (citation and internal quotation marks omitted).   The relationship requirement "contemplates some contact such that the plaintiff was a foreseeable victim of the defendant's acts in a tort sense." *Kneipp*, 95 F.3d at 1209 n.22.  Smith asserts Aaron was a member of a discrete class of persons – the students who attended Vaux – who were subject to harm as a result of the School District's actions.  *See Gremo*, 363 F. Supp. 2d at 789 (concluding the plaintiff was a member of a discrete class of persons, namely, the students who attended the plaintiff's high school, who were subjected to potential harm as a result of the state's actions).  The Court concludes Aaron's attendance at Vaux constituted a relationship between him and the School District such that he would be a foreseeable

victim of an alleged danger created by the School District.

Fourth, a plaintiff must show "a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all." *Bright*, 443 F.3d at 281 (citations and internal quotation marks omitted). Smith fails to identify an affirmative act by the School District which might give rise to liability. Rather, Smith's assertions regarding the School District's failure to remove S.F. from Vaux and failure to protect Aaron from a threatened attack amount to allegations of failure to act. Such allegations are insufficient to support a state-created danger claim. *See id.* at 278-79, 284-85 (affirming dismissal of a complaint alleging police and county officials were liable for a child's murder because they failed to incarcerate her murderer after they learned he violated his probation; police allegedly confronted the murderer about the parole violation, but inexplicably did not incarcerate him, and the murderer allegedly killed the victim in retaliation for the reporting of his violation; reasoning the "reality of the situation described in the complaint is that what is alleged to have created a danger was the failure of the defendants to utilize their state authority, not their utilization of it").

Thus, Smith has failed to adduce sufficient evidence to show the existence of three of four elements of a state-created danger claim. The Court will therefore grant the School District's motion for summary judgment. *See Celotex*, 477 U.S. 323 ("The moving party is 'entitled to judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof.") (quoting Rule 56(c)).

In addition, Smith has failed to show the School District may be held liable for any constitutional violation under *Monell v. Department of Social Services*, 436 U.S. 658 (1978). To

10

establish a municipality's liability under § 1983, a plaintiff must identify a "policy, statement, ordinance, regulation or decision officially adopted and promulgated by that body's officers" or "constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." *Id.* at 690-91. "A government policy or custom can be established in two ways.  Policy is made when a decisionmaker possessing final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict.  A course of conduct is considered to be a 'custom' when, though not authorized by law, such practices of state officials are so permanent and well settled as to virtually constitute law." *Andrews v. City of Phila.*, 895 F.2d 1469, 1480 (3d Cir. 1990) (citations, alterations, and internal quotation marks omitted).  Smith asserts the School District's failure to remove a dangerous student, S.F., from Vaux satisfies his burden under *Monell*.  This assertion alone is insufficient to pursue a claim against the School District under *Monell* because Smith fails to allege this decision was made in conformance with any official School District policy or unofficial custom.  Indeed, Smith fails to identify any School District policy or custom upon which liability may be premised.  Therefore, the School District is entitled to summary judgment on Smith's § 1983 claim.

An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ELLIS SMITH                              :              CIVIL ACTION
                                         :
        v.                               :              NO.  07-2080
                                         :
SCHOOL DISTRICT OF PHILADELPHIA          :

**FILED**

MAR 1 0 2009

MICHAEL E. KUNZ, Clerk
By_____ Dep. Clerk

## <u>ORDER</u>

AND NOW, this 10th day of March, 2009, Defendant School District of Philadelphia's

Motion for Summary Judgment (Document 15) is GRANTED.  Judgment is entered in favor of

Defendant School of Philadelphia and against Plaintiff Ellis Smith.

The Clerk of Court is directed to mark the above-captioned case CLOSED.

BY THE COURT:

Juan R. Sánchez, J.